JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| MCS Industries, Inc. | Elsa L Corporation |

| (b) County of Residence of First Listed Plaintiff   Northampton County, PA | County of Residence of First Listed Defendant   Marin County, California |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Bazelon Less & Feldman, P.C. | |
| One South Broad St, Ste 1500, Philadelphia, PA 19107 | |
| 215-568-1155 | |

## II. BASIS OF JURISDICTION *(Place an "X" in Box Only)*

☐ 1  U.S. Government
      Plaintiff

☒ 3  Federal Question
      *(U.S. Government Not a Party)*

☐ 2  U.S. Government
      Defendant

☐ 4  Diversity
      *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* *and One Box for Defendant)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability / ☐ 367 Health Care/ | | **PROPERTY RIGHTS** | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & Pharmaceutical | | ☐ 820 Copyrights | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander Personal Injury | | ☒ 830 Patent | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Product Liability | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability / ☐ 368 Asbestos Personal | | | Corrupt Organizations |
| Student Loans | ☐ 340 Marine Injury Product | | **LABOR** | ☐ 480 Consumer Credit |
| (Excludes Veterans) | ☐ 345 Marine Product Liability | ☐ 710 Fair Labor Standards | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability **PERSONAL PROPERTY** | Act | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle / ☐ 370 Other Fraud | ☐ 720 Labor/Management | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle / ☐ 371 Truth in Lending | Relations | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 190 Other Contract | Product Liability / ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Property Damage | ☐ 751 Family and Medical | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury / ☐ 385 Property Damage | Leave Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - Product Liability | ☐ 790 Other Labor Litigation | | Act |
| | Medical Malpractice | ☐ 791 Employee Retirement | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | Income Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment / ☐ 510 Motions to Vacate | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Sentence | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations / ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities - / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration | | |
| | Other / ☐ 550 Civil Rights | Actions | | |
| | ☐ 448 Education / ☐ 555 Prison Condition | | | |
| | ☐ 560 Civil Detainee - | | | |
| | Conditions of | | | |
| | Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original
     Proceeding

☐ 2 Removed from
     State Court

☐ 3 Remanded from
     Appellate Court

☐ 4 Reinstated or
     Reopened

☐ 5 Transferred from
     Another District
     *(specify)*

☐ 6 Multidistrict
     Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
35 U.S.C. § 271

Brief description of cause:
Patent infringement

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

DATE
05/11/2015

SIGNATURE OF ATTORNEY OF RECORD
*Noah M C*

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 2280 Newlins Mill Road, Easton, PA 18045

Address of Defendant: 800 A Street, San Rafael, CA 94901

Place of Accident, Incident or Transaction: Plaintiff, the patent holder, is located in the Eastern District of Pennsylvania.  Upon information and belief, defendant's
*(Use Reverse Side For Additional Space)*
infringing products have been sold in Pennsylvania.

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))          Yes☐   No☒

Does this case involve multidistrict litigation possibilities?          Yes☐   No☒
*RELATED CASE, IF ANY:*
Case Number: N/A _____   Judge _____   Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?          Yes☐   No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?          Yes☐   No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?          Yes☐   No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?          Yes☐   No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*
1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☑ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   (Please specify) _____

B. *Diversity Jurisdiction Cases:*
1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Noah H. Charlson _____, counsel of record hereby certify:
☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;
☒ Relief other than monetary damages is sought.

DATE: 5/11/2015 _____   _____   PA 89210
                              Attorney-at-Law        Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 5/11/2015 _____   _____   PA 89210
                              Attorney-at-Law        Attorney I.D.#

CIV. 609 (5/2012)

## UNITED STATES DISTRICT COURT

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM** to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 2280 Newlins Mill Road, Easton, PA 18045

Address of Defendant: 800 A Street, San Rafael, CA 94901

Place of Accident, Incident or Transaction: Plaintiff, the patent holder, is located in the Eastern District of Pennsylvania. Upon information and belief, defendant's

*(Use Reverse Side For Additional Space)*

infringing products have been sold in Pennsylvania.

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))        Yes☐  No☑

Does this case involve multidistrict litigation possibilities?        Yes☐  No☑

*RELATED CASE, IF ANY:*

Case Number: N/A _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?        Yes☐  No☑

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?        Yes☐  No☑

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?        Yes☐  No☑

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?        Yes☐  No☑

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☑ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
    (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Noah H. Charlson _____, counsel of record hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 5/11/2015 _____ _____ PA 89210
                              Attorney-at-Law              Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 5/11/2015 _____ _____ PA 89210
                              Attorney-at-Law              Attorney I.D.#

CIV. 609 (5/2012)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| MCS Industries, Inc. | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| Elsa L Corp. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.          ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health
   and Human Services denying plaintiff Social Security Benefits.                ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.   ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from
   exposure to asbestos.                                                        ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are
   commonly referred to as complex and that need special or intense management by
   the court.  (See reverse side of this form for a detailed explanation of special
   management cases.)                                                           ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.   (✓)

| | | |
|---|---|---|
| 5/11/2015 | _(signature)_ | MCS Industries, Inc. |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-568-1155 | 215-568-9319 | ncharlson@bazless.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

### Civil Justice Expense and Delay Reduction Plan
### Section 1:03 - Assignment to a Management Track

(a)  The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)  In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management.  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)  The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)  Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)  Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

### SPECIAL MANAGEMENT CASE ASSIGNMENTS
### (See §1.02 (e) Management Track Definitions of the
### Civil Justice Expense and Delay Reduction Plan)

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation.  The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985.  This term is intended to include cases that present unusual problems and require extraordinary treatment.  See §0.1 of the first manual.  Cases may require special or intense management by the court due to one or more of the following factors:  (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition.  It may include two or more related cases.  Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues.  See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| MCS Industries, Inc. | : | CIVIL ACTION |
| v. | : | |
| Elsa L Corp. | : | NO. |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus – Cases brought under 28 U.S.C. § 2241 through § 2255.    ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits.    ( )

(c) Arbitration – Cases required to be designated for arbitration under Local Civil Rule 53.2.    ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos.    ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.)    ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks.    (✓)

| | | |
|---|---|---|
| 5/11/2015 | _signature_ | MCS Industries, Inc. |
| **Date** | **Attorney-at-law** | **Attorney for** |
| 215-568-1155 | 215-568-9319 | ncharlson@bazless.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

**Civil Justice Expense and Delay Reduction Plan**
**Section 1:03 - Assignment to a Management Track**

(a)      The clerk of court will assign cases to tracks (a) through (d) based on the initial pleading.

(b)      In all cases not appropriate for assignment by the clerk of court to tracks (a) through (d), the plaintiff shall submit to the clerk of court and serve with the complaint on all defendants a case management track designation form specifying that the plaintiff believes the case requires Standard Management or Special Management. In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

(c)      The court may, on its own initiative or upon the request of any party, change the track assignment of any case at any time.

(d)      Nothing in this Plan is intended to abrogate or limit a judicial officer's authority in any case pending before that judicial officer, to direct pretrial and trial proceedings that are more stringent than those of the Plan and that are designed to accomplish cost and delay reduction.

(e)      Nothing in this Plan is intended to supersede Local Civil Rules 40.1 and 72.1, or the procedure for random assignment of Habeas Corpus and Social Security cases referred to magistrate judges of the court.

**SPECIAL MANAGEMENT CASE ASSIGNMENTS**
**(See §1.02 (e) Management Track Definitions of the**
**Civil Justice Expense and Delay Reduction Plan)**

Special Management cases will usually include that class of cases commonly referred to as "complex litigation" as that term has been used in the Manuals for Complex Litigation. The first manual was prepared in 1969 and the Manual for Complex Litigation Second, MCL 2d was prepared in 1985. This term is intended to include cases that present unusual problems and require extraordinary treatment. See §0.1 of the first manual. Cases may require special or intense management by the court due to one or more of the following factors: (1) large number of parties; (2) large number of claims or defenses; (3) complex factual issues; (4) large volume of evidence; (5) problems locating or preserving evidence; (6) extensive discovery; (7) exceptionally long time needed to prepare for disposition; (8) decision needed within an exceptionally short time; and (9) need to decide preliminary issues before final disposition. It may include two or more related cases. Complex litigation typically includes such cases as antitrust cases; cases involving a large number of parties or an unincorporated association of large membership; cases involving requests for injunctive relief affecting the operation of large business entities; patent cases; copyright and trademark cases; common disaster cases such as those arising from aircraft crashes or marine disasters; actions brought by individual stockholders; stockholder's derivative and stockholder's representative actions; class actions or potential class actions; and other civil (and criminal) cases involving unusual multiplicity or complexity of factual issues. See §0.22 of the first Manual for Complex Litigation and Manual for Complex Litigation Second, Chapter 33.

Noah H. Charlson, Esq.
Bazelon Less & Feldman, P.C.
One South Broad Street, Suite 1500
Philadelphia, PA 19107
(215) 568-1155

Attorneys for Plaintiff MCS Industries, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

Civil Action No.:

| | |
|---|---|
| MCS INDUSTRIES, INC., <br><br>                          Plaintiff, <br><br>     vs. <br><br> ELSA L CORP., <br><br>                      Defendant. | **COMPLAINT** <br><br> **and** <br><br> **JURY DEMAND** |

Plaintiff MCS Industries, Inc., by its undersigned attorneys, as and for its complaint against defendant ELSA L Corp., says:

### PARTIES

1.    Plaintiff MCS Industries, Inc. ("MCS"), is a Delaware corporation that maintains its principal place of business at 2280 Newlins Mill Road, Easton, Pennsylvania 18045.

2.    Defendant ELSA L Corp. ("ELSA") is, on information

1

and belief, a California corporation that maintains a principal place of business at 800A Street, San Rafael, California 94901.

## JURISDICTION

3.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 as it arises under the patent laws of the United States, 35 U.S.C. §1, *et seq.*

## BACKGROUND

4.     On June 10, 2014, the United States Patent and Trademark Office ("PTO") duly and legally issued U.S. Patent No. 8,746,644, entitled "Over-the-Door Hanging Apparatus" (the "'644 patent"). A copy of the '644 patent is attached as Exhibit A.

5.     Plaintiff MCS is the assignee and owner of all right, title and interest in and to the '644 patent.

6.     Defendant ELSA makes and/or sells a hanging mirror, bearing the name "Over-the-Door Full Size Mirror," that incorporates the claimed subject matter of the '644 patent.

## COUNT I

7.    Plaintiff MCS repeats and re-alleges the allegations of paragraphs 1 through 6 as if fully set forth here.

8.    Defendant ELSA has infringed and is continuing to infringe at least claim 1 of the '644 patent by manufacturing, using, importing, selling and/or offering to sell its Over-the-Door Full Size Mirror in violation of 35 U.S.C. § 271.

9.    As a result of Elsa's infringing actions, MCS has suffered damages.

10.    Unless restrained by this Court, Elsa will continue to infringe the '644 patent and will cause irreparable harm to MCS.

Wherefore, plaintiff MCS Industries, Inc., demands judgment in its favor and against defendant ELSA L Corporation as follows:

a.    for judgment that ELSA has infringed the '644 patent;

b.    for a permanent injunction barring ELSA and all persons in active concert or participation with it, from infringing the '644 patent;

c.    for an award of damages in an amount sufficient to compensate MCS for ELSA's infringement, together with prejudgment interest and costs of suit;

d.    for judgment that ELSA willfully infringed the '644 patent and an award to MCS of treble damages under 35 U.S.C. § 284;

3

e.      for judgment that this is an exceptional case under 35 U.S.C. §

285, and an award of reasonable attorneys' fees and expenses to MCS;

f.      for such other and further relief as the Court may deem just and

appropriate.

## <u>JURY DEMAND</u>

Plaintiff MCS requests trial by jury on all issues triable at law.


Respectfully submitted,


By: <u>s/Noah H. Charlson/</u>
        Noah H. Charlson
        Bazelon Less & Feldman, P.C.
        One South Broad Street, Suite 1500
        Philadelphia, PA 19107
        (215) 568-1155

Dated: May 11, 2015


Of counsel:

Glen M. Diehl, Esq.
Ethan R. Fitzpatrick, Esq.
GRAHAM CURTIN, P.A.
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962-1991
Telephone: (973) 272-1900
Facsimile:  (973) 272-1767

Attorneys for Plaintiff MCS Industries, Inc.

4

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 11.2

I hereby certify that United States Patent No. 8,746,644 is not the subject of any other action pending in any other court.

Respectfully submitted,

By: s/Noah H. Charlson/
     Noah H. Charlson
     Bazelon Less & Feldman, P.C.
     One South Broad Street, Suite 1500
     Philadelphia, PA 19107
     (215) 568-1155

Dated: May 11, 2015

Of counsel:

Glen M. Diehl, Esq.
Ethan R. Fitzpatrick, Esq.
GRAHAM CURTIN, P.A.
4 Headquarters Plaza
P.O. Box 1991
Morristown, NJ 07962-1991
Telephone: (973) 272-1900
Facsimile:  (973) 272-1767

Attorneys for Plaintiff MCS Industries, Inc.

# EXHIBIT A

US008746644B2

(12) **United States Patent**
    Kressin

(10) Patent No.: **US 8,746,644 B2**
(45) Date of Patent: ***Jun. 10, 2014**

(54) **OVER-THE-DOOR HANGING APPARATUS**

(71) Applicant: **MCS Industries, Inc.**, Easton, PA (US)

(72) Inventor: **Matthew S. Kressin**, Bethlehem, PA (US)

(73) Assignee: **MCS Industries, Inc.**

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **14/028,839**

(22) Filed: **Sep. 17, 2013**

(65) **Prior Publication Data**

US 2014/0014803 A1    Jan. 16, 2014

**Related U.S. Application Data**

(63) Continuation of application No. 12/915,747, filed on Oct. 29, 2010, now Pat. No. 8,534,627.

(60) Provisional application No. 61/334,914, filed on May 14, 2010.

(51) **Int. Cl.**
    *A47F 5/00*      (2006.01)
    *F16M 13/02*     (2006.01)
    *A47G 1/20*      (2006.01)

(52) **U.S. Cl.**
    CPC ................. *A47G 1/20* (2013.01); *F16M 13/02* (2013.01); *A14G 1/1653* (2013.01)
    USPC ............................ **248/307**; 248/323; 211/113

(58) **Field of Classification Search**
    USPC ............ 248/304, 305, 323, 215, 225.21, 307, 248/220.21, 220.22, 220.41, 220.31, 248/220.43; 211/113, 117
    See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2,270,796 A | | 1/1942 | Hauser |
| 3,224,715 A | | 12/1965 | Maggiore |
| 5,485,932 A | | 1/1996 | Romm et al. |
| 5,645,178 A | * | 7/1997 | Conley, Jr. ................. 211/87.01 |
| 6,223,914 B1 | | 5/2001 | Snell |
| 6,575,416 B1 | | 6/2003 | Avinger |
| 6,854,610 B2 | | 2/2005 | Adams |
| 6,857,528 B2 | | 2/2005 | Klein et al. |
| 7,188,741 B1 | | 3/2007 | Abdi et al. |
| 7,234,671 B2 | | 6/2007 | Avinger |
| 8,387,838 B2 | | 3/2013 | Adams et al. |
| 2005/0189458 A1 | | 9/2005 | Avinger |
| 2008/0110777 A1 | * | 5/2008 | Bentley et al. ................. 206/300 |
| 2008/0245751 A1 | | 10/2008 | Moran |

OTHER PUBLICATIONS

Columbia Frame, Instructions to hang mirror over the door, Columbia Frame Inc., 6251, rue Notre-Dame, Montreal, Quebec H1N 2E9, Nov. 23, 2005.

* cited by examiner

*Primary Examiner* — Steven Marsh

(74) *Attorney, Agent, or Firm* — Belles Katz LLC

(57) **ABSTRACT**

An apparatus for hanging an article from a door. In one aspect, the inventive apparatus can comprise a mounting system that can be used to hang a mirror, piece of art, or other flat article that is positioned within a frame to a door without the need for a screw driver or any other tools.

**16 Claims, 11 Drawing Sheets**





## FIG. 1



FIG.2



FIG. 3A          FIG. 3B



FIG. 4A                    FIG. 4B



FIG. 5



FIG. 6



FIG. 7

EXHIBIT B



FIG. 8

U.S. Patent          Jun. 10, 2014          Sheet 9 of 11          US 8,746,644 B2



FIG. 9



FIG. 10



FIG. 11

US 8,746,644 B2

**1**

## OVER-THE-DOOR HANGING APPARATUS

### CROSS-REFERENCE TO RELATED PATENT APPLICATIONS

The present application is a continuation application of United States Nonprovisional patent application Ser. No. 12/915,747, now U.S. Pat. No. 8,534,627, which in turn claims the benefit of U.S. Provisional Patent Application Ser. No. 61/334,914, filed May 14, 2010, the entirety of which is hereby incorporated by reference.

### FIELD OF THE INVENTION

The present invention relates generally to an over-the-door hanging apparatus, and specifically to an over-the-door hanging apparatus that includes a frame supporting a mirror or piece of art.

### BACKGROUND OF THE INVENTION

Mirrors are used often in everyday life. For example, the first thing that a person does after waking up is go to the bathroom and look at him or herself in the mirror. Furthermore, people also typically look at themselves in the mirror prior to leaving the house to make sure that they are pleased with their appearance. A very common room in the home for a person to desire to have a mirror is in the bedroom or the bathroom. However, there is not always a good place to put a mirror in those rooms. Therefore, it has been known to hang a mirror on a wall or on the back of a door by using adhesives, screws, nails or hangers. Doors have been widely used to support mirrors because they provide convenient available space, because they may be removed to facilitate mounting of the mirror, and because they avoid the necessity of placing wall anchors in plaster or drywall.

In addition to mirrors, people are often desirous to hang other articles or objects on the back of a door in order to conserve space while still enjoying the benefits of the article. For example, people may desire to hang a painting, picture or some other framed article from the back of a door. Depending on the person's needs and the space that the person has available, a person may desire to hang any object that may otherwise be hung or attached to a wall from a door instead.

Typical hangers that enable a user to hang a mirror or other article on the back of a door require a user to assemble the hanger onto the rear of the mirror or other article by screwing, gluing or otherwise attaching the hanger directly onto the rear of the mirror or other article. This type of an installation requires a screw driver or glue, which a user or consumer does not always have available. Furthermore, in the case of a screw-type assembly, even if the user has a screwdriver, the user may find it difficult to force the screw into the rear of the mirror or other article because the mirror or other article typically does not have pilot or pre-drilled holes.

Thus, a need exists for an apparatus and/or system that can be used to hang a mirror, piece of art, or other flat article to a door without the need for a screw driver or any other tools. A need also exists for an apparatus and/or system that enables a user to hang a mirror, piece of art, or other flat article from a door in a matter of seconds without the need for excessive physical force and with the ability to adjust its hanging height.

### SUMMARY OF THE INVENTION

These objects and others, which will become apparent from the following disclosure and drawings, are achieved by

**2**

the present invention which, in one aspect, can be an over-the-door hanging apparatus comprising: a frame having a rear surface and supporting a flat article, the frame comprising a first channel in the rear surface of the frame, a second channel in the rear surface of the frame, the first and second channels located on opposite sides of a vertical centerline of the frame; a first mounting plate and a second mounting plate, each of the first and second mounting plates comprising a first edge, a second edge, a third edge, and a vertical axis intersecting the first, second and third edges, the first edge spaced a first distance from the second edge along the vertical axis and the second edge spaced a second distance from the third edge along the vertical axis, wherein the first and second distances are substantially equal; the first mounting plate secured to the rear surface of the frame so that the vertical axis of the first mounting plate is coextensive with the first channel and the first, second, and third edges of the first mounting plate extend transverse to the first channel; the second mounting plate secured to the rear surface of the frame so that the vertical axis of the second mounting plate is coextensive with the second channel and the first, second, and third edges of the second mounting plate extend transverse to the second channel; a bracket assembly comprising a front surface, a second surface, a first pair of vertically aligned hooks extending outwardly from the front surface of the bracket assembly, each of the hooks of the first pair forming a slot, wherein the hooks of the first pair are spaced from one another by a third distance that is substantially equal to the first and second distances, a second pair of vertically aligned hooks extending outwardly from the front surface of the bracket assembly, each of the hooks of the second pair forming a slot, wherein the hooks of the second pair are spaced from one another by the third distance, and at least one bracket extending from the rear surface of the bracket assembly for engaging a top edge of the door; and wherein the frame is alterable between: (1) being slidably mounted to the bracket assembly by the first pair of hooks extending into the first channel so that the first and second edges of the first mounting plate are located within the slots of the hooks of the first pair, and the second pair of hooks extending into the second channel so that the first and second edges of the second mounting plate are located within the slots of the hooks of the second pair; and (2) being slidably mounted to the bracket assembly by the first pair of hooks extending into the first channel so that the second and third edges of the first mounting plate are located within the slots of the hooks of the first pair, and the second pair of hooks extending into the second channel so that the second and third edges of the second mounting plate are located within the slots of the hooks of the second pair.

In another aspect, the invention can be an over-the-door hanging apparatus comprising: a frame having a rear surface and supporting a flat article, the frame comprising a channel in the rear surface of the frame; a mounting plate comprising a first edge, a second edge, a third edge, and an axis intersecting the first, second and third edges, the mounting plate secured to the rear surface of the frame so that the axis of the mounting plate is coextensive with the channel and the first, second, and third edges of the mounting plate extend transverse to the channel; a bracket assembly comprising a front surface, a rear surface, a pair hooks extending outwardly from the front surface of the bracket assembly, each of the hooks forming a slot, and at least one bracket extending from the rear surface of the bracket assembly for engaging a top edge of the door, wherein the frame is alterable between (1) being slidably mounted to the bracket assembly at a first height by the hooks extending into the channel so that the first and second edges of the mounting plate are located within the

**3**

slots of the hooks; and (2) being slidably mounted to the bracket assembly at a second height that is different than the first height by the hooks extending into the channel so that the second and third edges of the mounting plate are located within the slots of the hooks.

In yet another aspect, the invention can be an over-the-door hanging apparatus comprising: a frame having a rear surface and supporting a flat article, a first channel in the rear surface of the frame, a second channel in the rear surface of the frame, the first and second channels located on opposite sides of a centerline of the frame; a first flat plate secured to the rear surface of the frame so as to overlie a top portion of the first channel and leave a bottom portion of the first channel unobstructed; a second flat plate secured to the rear surface of the frame so as to overlie a top portion of the second channel and leave a bottom portion of the second channel unobstructed; a bracket assembly comprising a front surface, a rear surface, a first hook extending outwardly from the front surface of the bracket assembly, a second hook extending outwardly from the front surface of the bracket assembly, and at least one bracket extending from the rear surface of the bracket assembly for engaging a top edge of the door; and the frame slidably mounted to the bracket assembly by the first hook extending into the top portion of the first channel via the bottom portion of the first channel and the second hook extending into the top portion of the second channel via the bottom portion of the second channel.

In still another aspect, the invention can be an over-the-door hanging apparatus comprising: a frame having a rear surface and supporting a flat article, the frame comprising a first channel in the rear surface of the frame, a second channel in the rear surface of the frame, the first and second channels located on opposite sides of a vertical centerline of the frame; a first mounting plate and a second mounting plate, each of the first and second mounting plates comprising a first edge, a second edge spaced from the first edge, and an axis intersecting the first and second edges, the first mounting plate secured to the rear surface of the frame so that the axis of the first mounting plate is coextensive with the first channel and the first and second edges of the first mounting plate extend transverse to the first channel, the second mounting plate secured to the rear surface of the frame so that the axis of the second mounting plate is coextensive with the second channel and the first and second edges of the second mounting plate extend transverse to the second channel; a bracket assembly comprising a front surface, a rear surface, a first hook extending outwardly from the front surface of the bracket assembly so as to form a first slot, a second hook extending outwardly from the front surface of the bracket assembly so as to form a second slot, and at least one bracket extending from the rear surface of the bracket assembly for engaging a top edge of the door; wherein the frame is alterable between: (1) being slidably mounted to the bracket assembly at a first height by the first hook extending into the first channel so that the first edge of the first mounting plate is located within the first slot, and the second hook extending into the second channel so that the first edge of the second mounting plate is located within the second slot; and (2) being slidably mounted to the bracket assembly at a second height that is different than the first height by the first hook extending into the first channel so that the second edge of the first mounting plate is located within the first slot, and the second hook extends into the second channel so that the second edge of the second mounting plate is located within the second slot.

In a further aspect, the invention can be an over-the-door hanging apparatus comprising: a frame having a rear surface and supporting a flat article, the frame comprising a first

**4**

channel in the rear surface of the frame, and a second channel in the rear surface of the frame, the first and second channels located on opposite sides of a centerline of the frame; a first mounting plate and a second mounting plate, each of the first and second mounting plates comprising a first edge, a second edge, a third edge, and an axis intersecting the first, second and third edges, the first mounting plate secured to the rear surface of the frame so that the first, second, and third edges overlie the first channel, the second mounting plate secured to the rear surface of the frame so that the first, second, and third edges of the second mounting plate overlie the second channel; a bracket assembly comprising a front surface, a rear surface, a first pair of hooks extending outwardly from the front surface of the bracket assembly, each of the hooks of the first pair forming a slot, a second pair of hooks extending outwardly from the front surface of the bracket assembly, each of the hooks of the second pair forming a slot, and at least one bracket extending from the rear surface of the bracket assembly for engaging a top edge of the door; wherein the frame is alterable between: (1) being slidably mounted to the bracket assembly at a first height by the first pair of hooks extending into the first channel so that the first and second edges of the first mounting plate are located within the slots of the hooks of the first pair, and the second pair of hooks extending into the second channel so that the first and second edges of the second mounting plate are located within the slots of the hooks of the second pair; and (2) being slidably mounted to the bracket assembly at a second height that is different than the first height by the first pair of hooks extending into the first channel so that the second and third edges of the first mounting plate are located within the slots of the hooks of the first pair, and the second pair of hooks extending into the second channel so that the second and third edges of the second mounting plate are located within the slots of the hooks of the second pair.

In an even further aspect, the invention can be an over-the-door hanging apparatus comprising: a frame having a rear surface, a vertical centerline and supporting a flat article; a first mounting plate and a second mounting plate, each of the first and second mounting plates comprising a first edge, a second edge, a third edge, and a vertical axis intersecting the first, second and third edges, the first and second mounting plates secured to the rear surface of the frame on opposite sides of the vertical centerline; a bracket assembly comprising a front surface, a rear surface, a first pair of hooks extending outwardly from the front surface of the bracket assembly, each of the hooks of the first pair forming a slot, a second pair of hooks extending outwardly from the front surface of the bracket assembly, each of the hooks of the second pair forming a slot, and at least one bracket extending from the rear surface of the bracket assembly for engaging a top edge of the door; wherein the frame is alterable between: (1) being slidably mounted to the bracket assembly at a first height by the first and second edges of the first mounting plate being slid into the slots of the hooks of the first pair, and the first and second edges of the second mounting plate being slid into the slots of the hooks of the second pair; and (2) being slidably mounted to the bracket assembly at a second height that is different than the first height by the second and third edges of the first mounting plate being slid into the slots of the hooks of the first pair, and the second and third edges of the second mounting plate being located within the slots of the hooks of the second pair.

In an even further aspect, the invention can be an over-the-door hanging apparatus comprising: a frame comprising an outer edge, an inner edge defining a central opening, and a rear surface; a mirror positioned within the central opening of

5

the frame; a first mounting plate and a second mounting plate, the first and second mounting plates secured to the rear surface of the frame on opposite sides of a vertical centerline of the frame, the first mounting plate comprising a first mounting element, the second mounting plate comprising a first mounting element; a first elongate member comprising a first mounting element and a first bracket for slidably engaging a top edge of a door; a second elongate member comprising a first mounting element and a second bracket for slidably engaging the top edge of the door; the frame slidably mounted to the first elongate member through slidable mating between at least the first mounting element of the first mounting plate and the first mounting element of the first elongate member; and the frame slidably mounted to the second elongate member through slidable mating between at least the first mounting element of the second mounting plate and the first mounting element of the second elongate member.

In a yet further aspect, the invention can be an over-the-door hanging apparatus comprising: a frame comprising an outer edge, an inner edge defining a central opening, and a rear surface; a flat article positioned within the central opening of the frame; a first mounting plate and a second mounting plate, the first and second mounting plates secured to the rear surface of the frame on opposite sides of a vertical centerline of the frame, the first mounting plate comprising a first edge, the second mounting plate comprising a first edge, the first edge of the first mounting plate being vertically aligned with the first edge of the second mounting plate; a bracket assembly comprising at least one bracket for engaging a top edge of the door, a first hook, and a second hook; the frame slidably mounted to the bracket assembly through slidable mating between: (1) the first edge of the of the first mounting plate and the first hook of the bracket assembly; and (2) the first edge of the of the second mounting plate and the second hook of the bracket assembly.

In still another aspect, the invention can be an over-the-door hanging apparatus comprising: a frame comprising a central opening and a rear surface; a flat article positioned within the central opening of the frame; first and second mounting elements located on the rear surface of the frame on opposite sides of a vertical centerline of the frame; a bracket assembly comprising at least one bracket for engaging a top edge of the door, a third mounting element, and a fourth mounting element; the frame slidably mounted to the bracket assembly through slidable mating between at least the first mounting element and the third mounting element and the second mounting element and the fourth mounting element.

BRIEF DESCRIPTION OF THE DRAWINGS

FIG. 1 is a perspective rear view of an over-the-door hanging apparatus in accordance with an embodiment of the present invention.

FIG. 2 is a close-up view of a top portion of the over-the-door hanging apparatus of FIG. 1.

FIG. 3a is a side view of a bracket assembly in accordance with an embodiment of the present invention.

FIG. 3b is a perspective view of the bracket assembly of FIG. 3a.

FIG. 4a is a perspective view of a mounting plate in accordance with an embodiment of the present invention.

FIG. 4b is a front view of the mounting plate of FIG. 4a.

FIG. 5 is an exploded view of one lateral side of the over-the-door hanging apparatus of FIG. 1.

FIG. 6 is a cross-sectional schematic of the over-the-door hanging apparatus showing the connection between the bracket assembly and the mounting plate.

6

FIG. 7 is a perspective rear view of an over-the-door hanging apparatus in accordance with a second embodiment of the present invention wherein an annular channel is formed into the frame to receive the hooks of the bracket assembly.

FIG. 8 is an exploded view of the components of one lateral side of the over-the-door hanging apparatus of FIG. 7.

FIG. 9 is an exploded view of the components of one lateral side of an over-the-door hanging apparatus in accordance with a third embodiment of the present invention wherein a single continuous channel is provided on each vertical member of the frame to receive the hooks of one member of the bracket assembly.

FIG. 10 is a rear view of an over-the-door hanging apparatus in accordance with a fourth embodiment of the present invention wherein multiple mounting plate segments are used to mate with the hooks of one member of the bracket assembly.

FIG. 11 is a perspective view of an over-the-door hanging apparatus of FIG. 1 hanging from the top edge of a door in accordance with the present invention.

DETAILED DESCRIPTION OF THE INVENTION

Referring to FIGS. 1-2 concurrently, a first embodiment of an over-the-door hanging apparatus 100 is illustrated. The over-the-door hanging apparatus 100 generally comprises a frame 101, a flat article 110 supported within the frame 100, first and second mounting plates 120, 220 secured to a rear surface 103 of the frame 101, and a bracket assembly 150 to which the frame 101 is slidably mounted (as discussed in greater detail below).

In the exemplified embodiment of FIGS. 1 and 2, the frame 101 is a perimeter-type frame comprising an outer edge 112 and an inner edge 113. The inner edge 113 forms a closed-geometry thereby defining a central opening 114. A flat article 110, such as a mirror, is positioned and supported within the central opening 114 according to known mounting techniques. Although the invention will be described with reference to the flat article 110 being a mirror, any other substantially flat article (or article with a substantially flat rear surface) can be used in conjunction with the present invention, including artwork, diplomas, or the like. Furthermore, as used herein, the term "frame" is not limited to a traditional perimeter-type frame having a central opening, but includes frames resembling a simple backer-board or plate that takes up the entire (or a portion of) rear surface area of the article to be mounted thereon. Preferably, however, the desired flat article is displayed by frame 101 so as to be visible to a user when the over-the-door hanging apparatus 100 is hung from a door as described below.

The over-the-door hanging apparatus 100 comprises a first mounting plate 120 and a second mounting plate 220 that are secured to the rear surface 103 of the frame 101 on opposite lateral sides of a vertical centerline A-A. The first and second mounting plates 120, 220 are secured to the frame 101 via screws 121, 221, respectively. Of course, other fasteners and fastening techniques can be used to secure the first and second mounting plates 120, 220 to the frame, including without limitation bolts, nails, rivets, clamps, ties, slot-and-groove mating connections, snap-fit connections, and/or combinations thereof.

The over-the-door hanging apparatus 100 also comprises a bracket assembly 150 to which the frame 101 is detachably mounted. More specifically, the frame 101 is detachably mounted to the bracket assembly through a slidable mating between the first and second mounting plates 120, 220 and the hooks of the bracket assembly 150, which will be described in

US 8,746,644 B2

7

8

great detail below. The frame **101** comprises a first channel **130** and a second channel **230** (fully visible in FIG. **5**). Only a bottom portion of the first and second channels **130**, **230** is visible in FIGS. **1** and **2**.

In the exemplified embodiment, the over-the-door hanging apparatus **100** comprises a perimeter-style frame **101**, two mounting plates **120**, **220** and a bracket assembly **150** that includes a first elongate bracket member **151** and a second elongate bracket member **251**. In this embodiment, the two mounting plates **120**, **220** are attached to the frame **101** on opposite sides of the vertical centerline A-A of the frame **101** while the first elongate member **151** is slidably attached to the first mounting plate **120** and the second elongate member **251** is slidably attached to the second mounting plate **220**. Of course, the invention is not so limited and the over-the-door hanging apparatus **100** may comprise only one mounting plate and one elongate bracket member connected to a central region of the frame **101**. Alternatively, the over-the-door hanging apparatus **100** may comprise greater than two mounting plates and a corresponding number of elongate members if the bracket assembly to provide for a more secure connection between the bracket assembly **150** and the frame **101**. Moreover, while the first and second elongate bracket members **151**, **251** are exemplified as separate structures, it is possible for theses members **151**, **251** to be formed as a single construct.

For purposes of referencing direction and orientation of the various components of the over-the-door hanging apparatus **100**, it should be noted that relative terms such as top, bottom, left, right, lateral, proximal, distal, upward, outward, inward, vertical, horizontal, and the like are used to delineate relative positions of the components of the inventive over-the-door hanging apparatus **100** with respect to one another and with respect to the vertical centerline A-A and are not intended to be in any further way limiting of the present invention.

Referring now to FIGS. **2**, **3***a* and **3***b* concurrently, a detailed description of the bracket assembly **150** will be set forth. The structural details of the elongate bracket members **151**, **252** will be discussed herein with respect to the first elongate member **151** with the understanding that the same is applicable to the second elongate member **251** in all respects.

The first elongate member **151** extends from a distal end **152** to a proximal end **153** and comprises a front surface **193** and an opposite rear surface **194**. The first elongate member **151** is preferably an integrally formed structure formed by appropriately bending a flat strip of flexible metal, such as a sheet metal. Of course, other materials and formation techniques can be used, including the molding, milling and/or lathing of plastics, matrix materials, or any other material capable of withstanding the required load-bearing requirements. Moreover, while the first elongate member **151** of the bracket assembly is preferably flexible in nature, it may be constructed so as to be substantially rigid if desired.

A generally U-shaped bracket **158** is provided at a proximal end **153** of the first elongate member **151** and extends from the rear surface **194** thereof for sliding over and engaging a top edge of a door. The U-shaped bracket **158** comprises a front portion **154**, a top portion **155** and a back portion **156** that terminates with an angled flange **157**. The front portion **154** corresponds to a top portion of the elongate member **151** and it encompasses the proximal end **153** of the elongate member **151**. The top portion **155** extends outward from the rear surface **194** of the elongate member **151** at the proximal end **153** so as to form an approximately 90 degree angle with the front portion **154** of the U-shaped bracket **158**. Although the top portion **155** is described as extending at an approximately 90 degree angle from the front portion **154** of the

U-shaped bracket **158**, it may extend at other angles if desired. The back portion **156** of the U-shaped bracket **158** extends downwardly from the top portion **155** at an approximately 90 degree angle with the top portion **155**, thereby forming the U-shaped bracket **158** of the first elongate member **151** of the bracket assembly **150**. The angled flange **157** diverges slightly outward from the back portion **156** at an obtuse angle Θ in order to facilitate placement of the U-shaped bracket **158** over a top edge of a door as will be described below with reference to FIG. **8**.

The U-shaped bracket **158** is preferably made of a flexible material so that it can bend and more easily fit over doors with varying widths. In other words, it is preferable that a user is able to extend the distance between the back portion **156** and the front portion **154** of the U-shaped bracket **158** by applying an outward force on the flange **157**. The top portion **155** of the U-shaped bracket **158** is made wide enough to accommodate a conventional door width which the inventive bracket assembly **150** is to be used. The thickness of the material, and hence its flexibility, must be chosen so that the U-shaped bracket **158** is sufficiently rigid to avoid deformation under the load of the flat article **110** and yet is thin enough to fit over the top of the door without creating clearance problems with respect to the cap of the door frame. In use, a user may grip and pull on the flange portion **157** of the U-shaped bracket **158** of the bracket assembly **150** in order to assist with the attachment of the bracket assembly **150** to the top edge of a door as will be described in detail below with reference to FIG. **11**.

The first elongate member **151** further comprises a top hook **161** and a bottom hook **162** near the distal end **152** of the elongate member **151**. The top hook **161** and the bottom hook **162** collectively form a pair of hooks and are often referred to as such throughout this application. In the exemplified embodiment, the top and bottom hooks **161**, **162** are integrally formed with the first member **151**. More specifically, the top and bottom hooks **161**, **162** are preferably formed by punching an appropriate pattern in the first elongate member **151** and subsequently bending the in-plane tab out of plane and into the desired shape. As a result, apertures **163**, **164** (i.e. holes) are formed in the elongate member **151** behind the hooks **161**, **162**. The apertures **163**, **164** enable the elongate member **151** to be manufactured with less material and also prevent the elongate member **151** from prematurely deteriorating due to the friction of the mounting plates **120**, **220** against the hooks **161**, **162**. Of course, the apertures **163**, **164** need not be included as a part of the elongate member **151** and the hooks **161**, **162** can be separate structures that are subsequently welded, fastened, clamped or otherwise connected to the first elongate member **151**.

The top and bottom hooks **161**, **162** each extend outwardly from the front surface **193** of the elongate member **151** and upwardly toward the proximal end **153**. The top hook **161** extends from a base **166** at which it connects to the elongate member **151** to a distal end **192** at which it terminates. Similarly, the bottom hook **162** extends from a base **165** at which it connects to the elongate member **151** to a distal end **191** at which it terminates. The top and bottom hooks **161**, **162** are preferably in a linear vertical alignment with one another on the front surface **193** of the elongate member **151**. The hooks **161**, **162** each have a length which is equal to the distance from the bases **165**, **166** to the distal ends **191**, **192** of the hooks **161**, **162**, respectively. The base **166** of the top hook **161** is spaced a distance D1 from the base **165** of the bottom hook **162**, the importance of which will become apparent from the description below with reference to FIGS. **4***a* and **4***b*.

The top and bottom hooks **161**, **162** are preferably S-shaped tabs. The S-shape of the top and bottom hooks **161**,

US 8,746,644 B2

9

162 are preferred in order to accomplish an efficient attachment between the bracket assembly 150 and the mounting plates 120, 220 as will be described below. The invention, of course, is not limited by the shape of the hooks and other shapes may be used as would be known to persons skilled in the art. For example, the top and bottom hooks 161, 162 could simply be straight tabs extending outwardly in an angled fashion from the bracket assembly 150 for slidable mating with the edges of the mounting plates as described below. Furthermore, it should be understood that the term hooks is intended to include any type of tab-type structure that may extend outwardly from the bracket assembly 150 in a manner that affords slidable mating with the edges of the mounting plates 120, 220 and is not intended to be in any other way limiting of the present invention.

Both of the top and bottom hooks 161, 162 extend outwardly and upwardly from the front surface 193 of the elongate member 151 in a spaced part manner so that slots 168, 169 are formed between the hooks 161, 162 and the front surface 193 of the elongate member 151. Both of the slots 168, 169 have an open top end 167, 197 that provides access into the slots 168, 169 so that the edges of the mounting plates can be lowered into the slots 168, 169 during mounting of the frame 101 to the bracket assembly 150, which will be described in greater below with reference to FIG. 6.

Referring now to FIGS. 4a and 4b, the details of the mounting plates 120, 220 of the present invention will be described. Similarly to the description of the elongate members 151, 251 above, only the first mounting plate 120 will be described in detail with the understanding that the discussion is applicable to the second mounting plate 220.

The first mounting plate 120 is preferably a flat plate that can be secured to the frame 101 by any of the techniques describe above. The first mounting plate 120 comprises a plurality of screw holes 122 that are sized and configured to receive a screw to facilitate the attachment of the first mounting plate 120 to the frame 101. Although the first mounting plate 120 is illustrated having three screw holes 122, the invention is not so limited and the first mounting plate 120 may have more or less than three screw holes 122 as desired. When attached to the frame 101, a rear surface (not shown) of the first mounting plate 120 is in surface contact with the rear surface 103 of the frame 101 by nature of their opposing flat surfaces.

The first mounting plate 120 is preferably a flat plate that is substantially free of contour for the entirety of its major planar surfaces. The first mounting plate 120 has an overall perimeter shape such that its cross-sectional area changes throughout its length. The first mounting plate 120 has a bottom edge 125, a top edge 126 and two vertical sides that collectively form the perimeter of the first mounting plate 120. The first mounting plate 120 also comprises a vertical axis B-B that is substantially transverse to and intersects the bottom and top edges 125, 126 of the first mounting plate 120. A top section 127 of the first mounting plate 120 extends from the top edge 126 of the first mounting plate 120 to a transition point TP1. A middle section 128 of the first mounting plate 120 extends from the transition point TP1 to a transition point TP2. A bottom section 129 of the first mounting plate 120 extends from the transition point TP2 to the bottom end 125 of the first mounting plate 120. The cross-sectional area of the top section 127 of the first mounting plate 120 gradually decreases from a point 141 in the top section 127 to the transition point TP1. The middle section 128 of the first mounting plate 120, which extends from the transition point TP1 to the transition point TP2, has a constant cross-sectional area throughout its length. The cross-sectional area of the

10

bottom section 129 of the first mounting plate 120 gradually increases from the transition point TP2 to a point 142. The cross-sectional area of the first mounting plate 120 is again constant from the point 142 of the bottom section 129 of the first mounting plate 120 to the bottom edge 125 of the first mounting plate 120. The shape of the first mounting plate 120 provides the first mounting plate 120 with a structural rigidity while using a minimized amount of materials in order to reduce the costs in manufacturing.

In the illustrated embodiment, the first mounting plate 120 comprises a top aperture 123 and a bottom aperture 124. The top aperture 123 is positioned partially within both of the top and middle sections 127, 128 while the bottom aperture 124 is positioned within the bottom section 129 only. Although the invention is described with a plate having two apertures, the first mounting plate 120 may have only one aperture or more than two apertures as would be understood by a person skilled in the art. Furthermore, the apertures 123, 124 may be positioned on other locations on the first mounting plate 120 as desired. Using more apertures will enable additional adjustability to the hanging height of the article as will be described below. The apertures 123, 124 in the first mounting plate 120 are preferably rectangular in shape, but may take on any other shape as desired.

The top aperture 123 is defined by a closed-geometry edge that includes a top edge 145 and a bottom edge 143. Similarly, the bottom aperture 124 is defined by a closed-geometry edge that includes a top edge 146 and a bottom edge 144. The top edge 145 of the top aperture 123 is spaced a distance D2 from the top edge 146 of the bottom aperture 124, measured along the linear axis B-B. Similarly, the top edge 146 of the bottom aperture 124 is spaced a distance D3 from the bottom edge 125, measured along the axis B-B. The first mounting plate 120 is designed so that the distance D2 is substantially equal to the distance D3. Furthermore, both of these distances D2, D3 are also substantially equal to the distance D1 between the hooks 161, 162 (discussed above with respect to FIGS. 3a, 3b). The importance of the edges 145, 146, 125, and the distances D1, D2, D3 will become apparent from the description below with reference to FIG. 5.

Referring now to FIG. 5, a portion of the over-the-door hanging apparatus 100 is illustrated in an exploded state. As can be seen, the frame 101 comprises has a first channel 130 formed into the rear surface 103 on one side of the vertical centerline A-A of the frame 101 along the right lateral (another one of the channels is provided on the opposite side of the vertical centerline A-A). In the exemplified embodiment of FIG. 5, the channel 130 is illustrated as a segmented channel 130 comprising a first channel segment 131, a second channel segment 132 and a third channel segment 133.

As noted above, FIG. 5 illustrates the channel 130 as comprising a first channel segment 131, a second channel segment 132 and a third channel segment 133. However, more than three channel segments may be used as desired for further adjustability in the hanging height of the over-the-door hanging apparatus 100 as will be described below. Furthermore, the frame 101 may be configured with less than three channel segments and still be used as described below as would be understood by a person skilled in the art.

Each of the channel segments 131-133 of the channel 130 is a rectangular shaped depression formed into the frame 101. The channel segments 131-133 of the channel 130 each form a groove or trough within the rear surface 103 of the frame 101 that comprises a floor and, thus, do not extend through the entire thickness of the frame 101. However, in alternative embodiments, one or more of the channel segments 131-133 of the channel 130 may be through-holes in the sense that they

**11**

could extend all the way through the thickness of the frame **101**. Of course, the channel segments **131-133** are contemplated as taking on any other shapes, including without limitation circles, triangles, trapezoids or the like.

Furthermore, while the channel **130** is exemplified as a segmented channel, the invention is not so limited and the channel **130** may be a singular continuous annular channel that extends around the entire perimeter of the rear surface **103** of the frame **101** or can be a continuous channel that extends from below the bottom edge **125** of the first mounting plate **120** to above the top edge **145** of the top aperture **123** of the first mounting plate **120**. These alternative embodiments are shown in FIGS. **7-9** and will be described in greater detail below.

Referring to FIGS. **5** and **6** concurrently, the placement and attachment of the first mounting plate **120** to the rear surface **103** of the frame **101** will be described. In FIGS. **5** and **6**, only the first mounting plate **120** is shown for clarity and ease of understanding. However, it is to be understood that the second mounting plate **220** is attached to the rear surface **103** of the frame **101** in the same manner as the first mounting plate **120**, except that the second mounting plate **220** is attached to the opposite side of the vertical centerline A-A of the frame **101** (FIG. **2**) in cooperation with a second channel.

The first mounting plate **120** is secured to the rear surface **103** of the frame **101** so that the vertical axis B-B of the first mounting plate **120** is coextensive with the elongated channel **130**, which in the exemplified embodiment is substantially parallel with the vertical centerline A-A. The second mounting plate **220** is secured to the rear surface **103** of the frame **101** on the opposite side of a vertical centerline A-A of the frame **101** in an identical orientation with respect to the second channel **230**.

More specifically, the first mounting plate **120** is secured to the frame **101** so that: (1) the first channel segment **131** extends from a position below the bottom edge **125** of the first mounting plate **120** to a position above the bottom edge **125** of the first mounting plate **120**; (2) the second channel segment **132** extends from a position below the top edge **146** of the bottom aperture **124** of the first mounting plate **120** to a position above the top edge **146** of the bottom aperture **124** of the first mounting plate **120**; and (3) the third channel segment **133** extends from a position below the top edge **145** of the top aperture **123** of the first mounting plate **120** to a position above the top edge **145** of the top aperture **124** of the first mounting plate **120**. While not required, it may be preferred that the first mounting plate **120** be secured to the frame **101** so that further: (1) the bottom edge **144** of the bottom aperture **124** is aligned with the top edge **146** of the bottom aperture **124** of the first mounting plate **120**; and (2) the bottom edge **143** of the top aperture **123** of the first mounting plate **120** is aligned with the top edge **145** of the top aperture **123** of the first mounting plate **120**.

When the first mounting plate **120** is secured to the frame **101** in the manner described above, the top aperture **123** is aligned with the first channel segment **133** and forms a passageway through the first mounting plate **120** into the third channel segment **133**. Similarly, the bottom aperture **124** is aligned with the second channel segment **132** and forms a passageway through the first mounting plate **120** into the second channel segment **132**. Moreover, the top edge **145** of the top aperture **123** extends transversely across the third channel segment **133**. The top edge **146** of the bottom aperture **124** extends transversely across the second channel segment **132**. The bottom edge **125** of the first mounting plate **120** extends transversely across the first channel segment **131**.

**12**

Referring solely now to FIG. **6**, the first, second and third channel segments **131-133** preferably extend above the bottom edge **125** of the first mounting plate **120**, the top edge **146** of the bottom aperture **124**, and the top edge **145** of the top aperture **123**, respectively, by a distance that is at least equal to the length of the hooks **161**, **162**. This configuration provides sufficient space for the hooks **161**, **162** to fit within the selected channel segments **131-133** when the frame **101** is slidably mounted to the bracket assembly **150** as will be discussed below.

Referring to FIGS. **2**, **5** and **6** concurrently, the attachment of the bracket assembly **150** to the first and second mounting plates **120**, **220** will be described. The description will be provided with specific reference to the mating between the first mounting plate **120** and the first elongate member **151** of the bracket assembly **150**. However, it should be understood that the description is equally applicable to the mating of the second mounting plate **220** with the second elongate member **251**.

After properly aligning the first mounting plate **120** as described above, the first mounting plate **120** is secured to the rear surface **103** of the frame **101** by extending the screws **121** through the screw holes **122** and threadily engaging the frame. It is preferred that the first and second mounting plates **120**, **220** be preassembled (i.e., secured) to the frame **101** during manufacturing. Thus, the user will be able to hang the apparatus **100** to a door without the need for any tools or excessive physical strength. In other words, the user will purchase the product fully assembled with the exception that the bracket assembly **150** will be separate from the first and second mounting plates **120**, **220** and frame **101**. As such, the user will only need to slide the U-Shaped brackets of the bracket assembly **150** over the top edge of the door and then slide the hooks **161**, **162** of the bracket assembly into mating cooperation with either: (1) the top edges **145**, **146** of the apertures **123**, **124**; or (2) the top edge **146** and the bottom edge **125**.

By nature of having an option between sliding the hooks **161**, **162** of the bracket assembly into mating cooperation with either: (1) the top edges **145**, **146** of the apertures **123**, **124**; or (2) the top edge **146** and the bottom edge **125**, the inventive over-the-door hanging apparatus **100** has an advantageous built-in hanging height adjustability. In other words, depending upon which of the channel segments **131-133** of the frame **101** the top and bottom hooks **161**, **162** are attached to, the hanging height may be altered. A more detailed description of how the inventive over-the-door hanging apparatus **100** may be hung at a lower and/or a higher position will be set forth below. It should be understood, however, that while the description will be set forth below in relation to the first elongate member **151** mating with the first mounting plate **120** and the first channel **130**, the same principles apply to the mating between the second elongate member **251**, the second mounting plate **220**, and the second channel **230**.

When a lower hanging position is desired, such as is shown in FIG. **6**, the first elongate member **151** of the bracket assembly **150** will be attached to the frame **101** by inserting the bottom hook **162** through the bottom aperture **124** in the first mounting plate **120** and the top hook **161** through the top aperture **123** in the first mounting plate **120**. Because the first mounting plate **120** is attached to the frame **101** so that the bottom aperture **124** is aligned with the second channel segment **132** and the top aperture **123** is aligned with the third channel segment **133**, the bottom hook **162** will be inserted into the second channel segment **132** of the frame **101** while the top hook **161** will be inserted into the third channel segment **133** of the frame **101**. Once sufficiently inserted through

13 14

the apertures **123**, **124** and into the second and third channel segments **132**, **133** of the frame **101**, the frame **101** will be lowered (or the elongate member **151** will be raised) until the top edge **145** of the top aperture **123** of the first mounting plate **120** slides into the slot **168** of the top hook **161** and the top edge **146** of the bottom aperture **124** of the first mounting plate **120** slides into the slot **169** of the bottom hook **162**. When fully slid into the slots **168**, **169**, the base **165** of the bottom hook **162** will contact the top edge **146** of the bottom aperture **124** of the first mounting plate **120** and the base **166** of the top hook **161** will contact the top edge **145** of the top aperture **123** of the first mounting plate **120**.

As noted above, the second and third channel segments **132**, **133** extend upwardly beyond the edges **145**, **146** (in the direction of the vertical axis A-A) and beneath the first mounting plate **120**. This configuration enables the hooks **161**, **162** of the bracket assembly **150** to extend into the frame **101** so that a portion of the first mounting plate **120** is snugly disposed within each of the slots **168**, **169**.

Through this slidable mating, the hooks **161**, **162** frictionally engage the portions of the first mounting plate **120** positioned within the slots **168**, **169** to prevent the frame **101** from becoming accidentally dislodged from the bracket assembly **150**. The frictional engagement is further facilitated by the S-shape and resilient nature of the hooks **161**, **162**. Although the attachment is described as being a friction fit, the invention is not so limited and the attachment may be described as a press fit, an interference fit or any other fit as would be known to persons skilled in the art. The attachment between the bracket assembly **150** and the frame **101** will be enhanced when the U-shaped bracket **158** of the bracket assembly **150** is attached to a top edge of a door because the weight of the flat article **110** being hung will increase the tight nature of the fit between the hooks **161**, **162** and the combined plate/frame **120**/**101** apparatus.

The invention has been described with the bracket assembly **150** attached to the second and third channel segments **133**, **132** in the frame **101**. Such an attachment is used when the hanging height of the mirror or article is desired to be a lower hanging height. As noted above, the hanging height of the over-the-door hanging apparatus **100** is adjustable. Therefore, the mirror or other flat article **110** may be hung at a higher hanging height in the manner described below and as shown in FIG. **2**.

When the first mounting plate **120** is secured to the frame **101**, the first channel segment **131** in the frame **101** extends beyond the bottom edge **125** of the first mounting plate **120** as illustrated in FIG. **2**. Therefore, rather than attaching the bracket assembly **150** through the second and third channel segments **133**, **132** of the frame **101**, the hooks **161**, **162** of the bracket assembly **150** are attached to the second and first channel segments **132**, **131** of the frame **101**, respectively. Specifically, the bottom hook **162** will be inserted into the first channel segment **131** below the bottom edge **125** of the first mounting plate **120** while the top hook **161** will be inserted into the second channel segment **132** via the bottom aperture **124** of the first mounting.

Once sufficiently inserted into the first and second channel segments **131**, **132** of the frame **101**, the frame **101** will be lowered (or the elongate member **151** will be raised) until the top edge **146** of the bottom aperture **124** of the first mounting plate **120** slides into the slot **168** of the top hook **161** and the bottom edge **146** of the first mounting plate **120** slides into the slot **169** of the bottom hook **162**. When fully slid into the slots **168**, **169**, the base **165** of the bottom hook **162** will contact the top edge **146** of the bottom aperture **124** of the first mounting

plate **120** and the base **166** of the top hook **161** will contact the bottom edge **125** of the first mounting plate **120**.

As noted above, the first and second channel segments **131**, **132** extend upwardly beyond the edges **146**, **125** (in the direction of the vertical axis A-A) and beneath the first mounting plate **120**. This configuration enables the hooks **161**, **162** of the bracket assembly **150** to extend into the frame **101** so that a portion of the first mounting plate **120** is snugly disposed within each of the slots **168**, **169**. Thus, the same frictional/interference fit is formed. With such an attachment, the apparatus **100** may be hung at a higher level on a door than previously described manner. Thus, the present invention provides an easy and efficient way for a user to adjust the hanging height of a mirror or other object without the need for tools or an excessive amount of physical force. The adjustable height mounting is achieved by designing the distances D1, D2, D3 to be substantially equal.

Of course, the second elongate member **251** may be attached in the same manner as described above except that the second elongate member **251** is attached to the second mounting plate **220** which is secured onto the frame **101** on the opposite side of the vertical centerline A-A. By using the first and second elongate members **151**, **251**, the flat article **110** will be more securely hung from the top of the door.

Referring to FIGS. **7** and **8** concurrently, an alternative embodiment of a frame **301** to be used with an over-the-door hanging apparatus **300** will be described. The components of the over-the-door hanging apparatus **300** that are the same as the components described above with reference to the over-the-door hanging apparatus **100** will be delineated by the same reference numerals except that the over-the-door hanging apparatus **300** will use the 300- and 400-series of numbers rather than the 100- and 200-series of numbers. Furthermore, only those aspects of the over-the-door hanging apparatus **300** that are different from the over-the-door hanging apparatus **100** described above will be described below in detail. Therefore, all features of the over-the-door hanging apparatus **300** that are not described below should be interpreted as being identical to the corresponding component from the over-the-door hanging apparatus **100** described above.

Specifically, rather than having a channel **130** comprising three distinct channel segments **131**-**133** in the frame **101** that require time and effort in order to properly align the first and second mounting plates **120**, **220** as described above, the frame **301** may have a continuous channel **330** along all four sides of the frame **301** so as to form an annular channel about the perimeter of the frame **301**. This embodiment is advantageous in that it reduces the costs in manufacturing by reducing the amount of material needed to create the frame **301** and by reducing the time required to attach the first and second mounting plates **320**, **420** to the frame **301**.

In use, the first mounting plate **320** is aligned with the channel **330** so that the channel **330** can be seen through the apertures **323**, **324** in the first mounting plate **320**. This embodiment nullifies the need to align the apertures **323**, **324** of the first mounting plate **320** with the channel **330** in a vertical direction and instead enables the first mounting plate **320** to be attached to the frame **301** in a myriad of positions so long as the channel **330** is visible and accessible through the apertures **323**, **324**. Such an embodiment provides a significantly greater amount of flexibility to the hanging height of the flat article.

After the first mounting plate **320** (and preferably also the second mounting plate **420**) is secured to the frame, the hooks **361**, **362** of the bracket assembly **350** are inserted through the apertures **323**, **324** of the first mounting plate **320** in the same manner as described above. The entire attachment procedure

15

between the bracket assembly 350 and the frame 301 is identical to the attachment procedure described above with reference to the bracket assembly 150 and the frame 101. Essentially, the over-the-door hanging apparatus 300 is identical to the over-the-door hanging apparatus 100 except that instead of having a segmented channel 130 in the frame 101, there is one continuous channel 330 in the frame 301 that forms a rectangular border around the entirety of the frame 301. As can be seen the channel 330 still extends from a position below to a position above each of the edges 345, 346, 325.

Referring to FIG. 9, another alternative embodiment of the channel in the frame will be described. This embodiment comprises a continuous channel 530 that is not segmented and that does not form a border around the frame 101. Rather, the channel 530 only extends from a position below the bottom edge 147 of the first mounting plate 120 to a position above the top edge 145 of the top aperture 123 of the first mounting plate 120. In such an embodiment, a second channel (not shown) which is identical to the channel 530 will be located on the opposite lateral side of the frame 101, thereby forming a mirror image.

Referring to FIG. 10, an alternative embodiment for a mounting plate will be described. The first and second mounting plates 120, 220 may each comprise a first plate segment 621, 721, a second plate segment 622, 722 and a third plate segment 623, 723. This embodiment will be further described only with reference to the first mounting plate 120. It should be understood that the second mounting plate 220 will have features and components that are identical to the first mounting plate 120.

In the embodiment illustrated in FIG. 10, a bottom edge 625 of the third plate segment 623 serves an identical purpose to the bottom edge 125 of the first mounting plate 120 described above. Furthermore, a bottom edge 646 of the second plate segment 622 serves an identical purpose to the top edge 146 of the bottom aperture 124 of the first mounting plate 120. Further still, a bottom edge 645 of the first plate segment 621 serves an identical purpose to the top edge 145 of the top aperture 123 of the first mounting plate 120. It should be understood to a person skilled in that art that the inventive over-the-door hanging apparatus 100 would operate in the same exact manner with the three plate segment 621, 622, 623 embodiment as it would with the mounting plate 120 as described above. In other words, the bracket assembly 150 will be attached to the embodiment illustrated in FIG. 10 in the same manner as was described above.

Referring to FIG. 11, the mirror 110 or other article is illustrated hanging from a top edge 171 of a door 170. In the illustrated embodiment, the mirror or other flat article 110 is attached to the bracket assembly 150 which comprises the first elongate member 151 and the second elongate member 251 on opposite lateral sides of the rear surface (not shown) of the flat article 110. The U-shaped brackets 158, 258 of the elongate members 151, 251 of the bracket assembly 150 are attached to the top edge 171 of the door 170 so that the flat article 110 is hung therefrom. When the flat article 110 is a mirror, it is hung so that the reflective front surface 111 is visible and the rear surface (not shown) is in surface contact with the door 170. It should be understood that any of the various types of channels and mounting plates may be used with the inventive over-the-door hanging apparatus in many different combinations. For example, the three plate segment 621, 622, 623 mounting plate may be used with the segmented channels 131, 132, 133 or with the elongated channel 530 or with the border/annular channel 330. Similarly, the first and second mounting plates 120, 220 may also be used with any of the above mentioned channel configurations.

16

In alternative embodiments of the invention, which are not illustrated, the frame 100 may not include channels 130, 230 in its rear surface 101. In such embodiments, the first and second mounting plates 120, 220 (or the segments thereof) would be placed over planar sections of the rear surface 101 of the frame 100 and be designed so that the hooks 161-162, 191-292 could be slid/inserted between a raised portion of the mounting plates 120, 220 and the planar sections of the rear surface 101. This could be accomplished by forming the first, second and/or third edges 125, 145, 146 to include a raised portion that protrudes from the rear surface 101 of the frame 100, thereby forming a nesting space/gap between the rear surface 101 of the frame 100 and the rear surfaces of the mounting plates 120, 220 (or the segments thereof). For example, the mounting plates 120, 220 (or the segments thereof) could be formed in to resemble one half of a C-clamp and/or a V-clamp. In another example, a small section of the first, second and/or third edges 125, 145, 146 could be bent out of plane with the remaining sections of the mounting plates 120, 220 (or the segments thereof) that are coupled to the frame 100. Finally, any of the foregoing details described above with respect to FIGS. 1-11 could be utilized with such an alternative embodiment.

While the invention has been described with respect to specific examples including presently preferred modes of carrying out the invention, those skilled in the art will appreciate that there are numerous variations and permutations of the above described systems and techniques. It is to be understood that other embodiments may be utilized and structural and functional modifications may be made without departing from the scope of the present invention. Thus, the spirit and scope of the invention should be construed broadly as set forth in the appended claims.

What is claimed is:

1. An over-the-door hanging apparatus comprising:

a frame comprising an outer edge, an inner edge defining a central opening, and a rear surface;

a mirror positioned within the central opening of the frame;

a first mounting plate and a second mounting plate, the first and second mounting plates secured to the rear surface of the frame on opposite sides of a vertical centerline of the frame, the first mounting plate comprising a first mounting element, the second mounting plate comprising a first mounting element;

a first elongate member comprising a first mounting element and a first bracket for slidably engaging a top edge of a door;

a second elongate member comprising a first mounting element and a second bracket for slidably engaging the top edge of the door;

the frame slidably mounted to the first elongate member through slidable mating between at least the first mounting element of the first mounting plate and the first mounting, element of the first elongate member;

the frame slidably mounted to the second elongate member through slidable mating between at least the first mounting element of the second mounting plate and the first mounting element of the second elongate member;

wherein the first mounting element of the first elongate member comprises a first hook and the first mounting element of the second elongate member comprises a first hook; and

wherein the mounting element of the first mounting plate comprises a raised portion that protrudes from the rear surface of the frame, the first hook of the first elongate member slidably inserted between the raised portion of the first mounting plate and the frame; and

**17**

wherein the first mounting element of the second mounting plate comprises a raised portion that protrudes from the rear surface of the frame, the first hook of the second elongate member slidably inserted between the raised portion of the second mounting plate and the frame.

**2**. The over-the-door hanging apparatus according to claim **1** wherein the first mounting element of the first mounting plate comprises a first edge, the first edge of the first mounting plate located within a slot of the first hook of the first elongate member; and wherein the first mounting element of the second mounting plate comprises a first edge, the first edge of the second mounting plate located within a slot of the first hook of the second elongate member.

**3**. An over-the-door hanging apparatus comprising:

a frame comprising an outer edge, an inner edge defining, a central opening, and a rear surface;

a mirror positioned within the central opening of the frame;

a first mounting plate and a second mounting plate, the first and second mounting plates secured to the rear surface of the frame on opposite sides of a vertical centerline of the frame, the first mounting plate comprising a first mounting element, the second mounting plate comprising a first mounting element;

a first elongate member comprising a first mounting element and a first bracket for slidably engaging a top edge of a door;

a second elongate member comprising a first mounting element and a second bracket for slidably engaging the top edge of the door;

the frame slidably mounted to the first elongate member through slidable mating between at least the first mounting element of the first mounting plate and the first mounting element of the first elongate member;

the frame slidably mounted to the second elongate member through slidable mating between at least the first mounting element of the second mounting plate and the first mounting element of the second elongate member;

wherein the first mounting element of the first elongate member comprises a first hook and the first mounting element of the second elongate member comprises a first hook;

wherein the first mounting element of the first mounting plate comprises a first edge, the first edge of the first mounting plate located within a slot of the first hook of the first elongate member; and wherein the first mounting, element of the second mounting plate comprises a first edge, the first edge of the second mounting plate located within a slot of the first hook of the second elongate member;

an annular channel formed into the rear surface of the frame;

the first mounting element of the first mounting plate comprising a first edge, the first mounting plate secured to the rear surface of the frame so that the first edge of the first mounting plate overlies the annular channel;

the first mounting element of the second mourning plate comprising a first edge, the second mounting plate secured to the rear surface of the frame so that the first edge of the second mounting plate overlies the annular channel;

the first hook of the first elongate member extending into the annular channel; and

the first hook of the second elongate member extending into the annular channel.

**4**. The over-the-door hanging apparatus according to claim **3** wherein the first edge of the first mounting plate extends substantially transversely across the annular channel and the

**18**

first edge of the second mounting plate extends substantially transversely across the annular channel.

**5**. An over-the-door hanging apparatus comprising:

a frame comprising an outer edge, an inner edge defining a central opening, and a rear surface;

a mirror positioned within the central opening of the frame;

a first mounting plate and a second mounting plate, the first and second mounting plates secured to the rear surface of the frame on opposite sides of a vertical centerline of the frame, the first mounting plate comprising a first mounting element, the second mounting plate comprising a first mounting element;

a first elongate member comprising a first mounting element and a first bracket for slidably engaging a top edge of a door;

a second elongate member comprising a first mounting element and a second bracket for slidably engaging the top edge of the door;

the frame slidably mounted to the first elongate member through slidable mating between at least the first mounting element of the first mounting plate and the first mounting element of the first elongate member;

the frame slidably mounted to the second elongate member through slidable mating between at least the first mounting element of the second mounting plate and the first mounting element of the second elongate member;

wherein the first mounting element of the first elongate member comprises a first hook and the first mounting element of the second elongate member comprises a first hook;

wherein the first mounting element of the first mounting plate comprises a first edge, the first edge of the first mounting plate located within a slot of the first hook of the first elongate member; and wherein the first mounting element of the second mounting plate comprises a first edge, the first edge of the second mounting plate located within a slot of the first hook of the second elongate member;

a first channel formed into the rear surface of the frame;

a second channel formed into the rear surface of the frame;

the first mounting element of the first mounting plate comprising a first edge, the first mounting plate secured to the rear surface of the frame so that the first edge of the first mounting plate overlies the first channel;

the first mounting element of the second mounting plate comprising a first edge, the second mounting plate secured to the rear surface of the frame so that the first edge of the second mounting plate overlies the second channel;

the first hook of the first elongate member extending into the first channel; and

the first hook of the second elongate member extending into the second channel.

**6**. The over-the-door hanging apparatus according to claim **5** wherein the first edge of the first mounting plate extends substantially transversely across the first channel and the first edge of the second mounting plate extends substantially transversely across the second channel.

**7**. The over-the-door hanging apparatus according, to claim **2** wherein the first edge of the first mounting plates is formed by a first aperture in the first mounting plate, and the first edge of the second mounting plates is formed by a first aperture in the second mounting plate.

**8**. The over-the-door hanging apparatus according to claim **1** wherein the first elongate member comprises a first aperture and wherein the second elongate member comprises a first aperture.

US 8,746,644 B2

19

**9**. The over-the-door hanging apparatus according to claim **1** further comprising:

the first bracket and a top portion of the first elongate member collectively forming a generally U-shaped structure having a first angled flange; and

the second bracket and a top portion of the second elongate member collectively forming a generally U-shaped structure having a second angled flange.

**10**. An over-the-door hanging apparatus comprising:

a frame comprising an outer edge, an inner edge defining, a central opening, and a rear surface;

a flat article positioned within the central opening, of the frame;

a first mounting plate and a second mounting plate, the first and second mounting plates secured to the rear surface of the frame on opposite sides of a vertical centerline of the frame, the first mounting plate comprising a first edge, the second mounting, plate comprising a first edge;

a bracket assembly comprising at least one bracket for engaging a top edge of the door, a first hook, and a second hook;

the frame slidably mounted to the bracket assembly through slidable mating between: (1) the first edge of the first mounting plate and the first hook of the bracket assembly; and (2) the first edge of the second mounting plate and the second hook of the bracket assembly; and

wherein the first mounting plate comprises a raised portion that protrudes from the rear surface of the frame and comprises the first edge of the first mounting plate, the first hook of the bracket assembly inserted between the raised portion of the first mounting plate and the frame;

and wherein the second mounting plate comprises a raised portion that protrudes from the rear surface of the frame and comprises the first edge of the second mounting plate, the second hook of the second elongate member slidably inserted between the raised portion of the second mounting plate and the frame.

**11**. An over-the-door hanging, apparatus comprising:

a frame comprising an outer edge, an inner edge defining a central opening, and a rear surface;

a flat article positioned within the central opening of the frame;

a first mounting plate and a second mounting plate, the first and second mounting plates secured to the rear surface of the frame on opposite sides of a vertical centerline of the frame, the first mounting plate comprising a first edge, the second mounting plate comprising a first edge, the first edge of the first mounting plate being vertically aligned with the first edge of the second mounting plate;

a bracket assembly comprising at least one bracket for engaging a top edge of the door, a first hook, and a second hook;

the frame slidably mounted to the bracket assembly through slidable mating between: (1) the first edge of the first mounting plate and the first hook of the bracket assembly; and (2) the first edge of the second mounting plate and the second hook of the bracket assembly;

an annular channel formed into the rear surface of the frame;

the first mounting plate secured to the rear surface of the frame so that the first edge of the first mounting plate overlies the annular channel;

20

the second mounting plate secured to the rear surface of the frame so that the first edge of the second mounting plate overlies the annular channel;

the first hook of the bracket assembly extending into the annular channel; and

the second hook of the bracket assembly extending into the annular channel.

**12**. The over-the-door hanging apparatus according to claim **11** wherein the first edge of the first mounting plate extends substantially transversely across the annular channel and the first edge of the second mounting plate extends substantially transversely across the annular channel.

**13**. An over-the-door hanging apparatus comprising:

a frame comprising an outer edge, an inner edge defining a central opening, and a rear surface;

a flat article positioned within the central opening of the frame;

a first mounting plate and a second mounting plate, the first and second mounting plates secured to the rear surface of the frame on opposite sides of a vertical centerline of the frame, the first mounting plate comprising a first edge, the second mounting plate comprising a first edge, the first edge of the first mounting plate being vertically aligned with the first edge of the second mounting plate;

a bracket assembly comprising at least one bracket for engaging a top edge of the door, as first hook, and a second hook;

the frame slidably mounted to the bracket assembly through slidable mating between: (1) the first edge of the first mounting plate and the first hook of the bracket assembly; and (2) the first edge of the second mounting plate and the second hook of the bracket assembly;

a first channel formed into the rear surface of the frame;

a second channel formed into the rear surface of the frame;

the first mounting plate secured to the rear surface of the frame so that the first edge of the first mounting plate overlies the first channel;

the second mounting plate secured to the rear surface of the frame so that the first edge of the second mounting plate overlies the second channel;

the first hook of the bracket assembly extending into the first channel; and

the first hook of the bracket assembly extending into the second channel.

**14**. The over-the-door hanging apparatus according to claim **13** wherein the first edge of the first mounting plate extends substantially transversely across the first channel and the first edge of the second mounting plate extends substantially transversely across the second channel.

**15**. The over-the-door hanging apparatus according to claim **13** wherein the first edge of the first mounting plates is formed by a first aperture in the first mounting plate, and the first edge of the second mounting plates is formed by a first aperture in the second mounting plate.

**16**. The over-the-door hanging apparatus according to claim **10** wherein the bracket assembly comprises:

a first bracket for engaging the top edge of the door, the first bracket having a first angled flange; and

a second bracket for engaging the top edge of the door, the second bracket having a second angled flange.

*   *   *   *   *